IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| David Varnadore, | ) | Civil Action No. 3:13-cv-01777-CMC |
| | ) | |
| Plaintiff, | ) | OPINION AND ORDER |
| | ) | TRANSFERRING ACTION |
| v. | ) | |
| | ) | |
| Nationwide Mutual Insurance Company, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Through this action, Plaintiff, David Varnadore ("Varnadore"), seeks recovery from Defendant, Nationwide Mutual Insurance Company ("Nationwide"), for alleged breach of a Replacement Agency Executive Performance Agreement ("RAE Agreement") and related fraudulent acts. Most critically, Varnadore alleges that Nationwide failed to pay him the amounts due under Section 18 of the RAE Agreement, which is entitled "Early Termination Payment." Varnadore further alleges that Nationwide achieved this result by fraudulently inducing him into signing an amendment to the RAE Agreement ("Amendment Agreement").

This matter was originally filed in the Court of Common Pleas for Richland County, South Carolina. After removing the matter to this court, Nationwide moved to dismiss for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1406(a). Nationwide's motion is founded on a forum-selection clause in the RAE Agreement which provides that "any action or proceeding arising from a dispute concerning the RAE Program shall be brought in Franklin County, Ohio." RAE Agreement § 22. In the alternative, Nationwide seeks to transfer venue to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 1404(a). Varnadore opposes both dismissal and transfer.

For the reasons set forth below, the court concludes that Varnadore's claims necessarily concern the RAE Program and are, therefore, subject to the RAE Agreement's forum-selection clause. The court further concludes that there is no impediment to enforcement of this forum-selection clause. The court, nonetheless, finds that transfer rather than dismissal is the better remedy and transfers the matter under 28 U.S.C. § 1404(a).

## BACKGROUND

**Complaint.** The complaint alleges that Varnadore entered the RAE Agreement with Nationwide "[e]ffective April 1, 2010." Complaint ¶ 3; Complaint Ex. A (RAE Agreement) This agreement allowed Varnadore both to become an agent for Nationwide and to replace an existing agent, which entitled him to service accounts sold by the agent he replaced. *Id.* ¶¶ 4,5. It also provided for an "Early Termination Payment" to Varnadore if either party terminated the agreement after a specified period of time (six months and ten days from the "Production Effective Date"). *Id.* ¶ 6.[1]  Varnadore alleges he provided Nationwide notice of his intended resignation in October or November of 2011, effective December 31, 2011. *Id.*¶ 7.[2] Nationwide responded by encouraging Varnadore to defer his resignation until January 31, 2012. *Id.* ¶ 8. Varnadore complied with this request, making his resignation effective January 31, 2012. *Id.* ¶ 9.

---

[1] The Early Termination Payment is subject to various offsets including for amounts Varnadore might owe Nationwide under a separate provision that assigns a "Value" to the right to service accounts sold by the agent Varnadore replaced. RAE Agreement § 18. Pursuant to this provision, Varnadore was obligated to pay Nationwide the Value of the assigned accounts six months and ten days after the Production Effective Date, although he had the option to pay it in full or over time through deductions from commissions after a minimum payment of 20% of the Value.

[2] December 31, 2011, was a sufficient time after the Production Effective Date to entitle Varnadore to the Early Termination Payment.

Based on his resignation date and calculation of anticipated offsets, Varnadore alleges that he was entitled to an Early Termination Payment of $97,000. *Id.* ¶¶ 9-11. Nationwide did not, however, pay him this amount. It instead sent a letter on or about February 6, 2012, which Varnadore characterizes as a post-termination, unilateral modification of the RAE Agreement. *Id.* ¶¶ 12, 13; Complaint Ex. B ("February 2012 Letter"). This letter summarizes and attaches an "Amendment to the Replacement Agency Executive Performance Agreement" ("Amendment Agreement"), which is characterized primarily as a clarification of the "Early Cancellation Provision" of the RAE Agreement.[3] Complaint ¶ 15; Complaint Ex. C.

Varnadore alleges that the collective effect of the February 2012 Letter and Amendment Agreement was to recast the Early Termination Payment as a "Refund Payment" and reduce the amount paid from $97,000 to $21,925.67. Complaint ¶ 17. Although he concedes that he signed the Amendment Agreement and accepted the reduced payment, Varnadore asserts that he was forced to do so because he was, by this point, in a financial bind due, at least in part, to Nationwide's actions. Complaint ¶¶ 19-23 (alleging he "was forced, without additional consideration, to sign the Amendment Agreement" and to accept the lower payment, causing him losses in excess of $75,000).[4]

Based on these allegations, Varnadore alleges the following five causes of action: (1) breach of the RAE Agreement (most critically failing to pay the amount Varnadore calculated was due

---

[3] The letter mislabels the provision as an "Early Cancellation Provision." The number and subject matter are, however, the same as the Early Termination Provision in the RAE Agreement.

[4] For purposes of the present motion, the court accepts these allegations as true. Specifically, the court assumes without deciding that: (1) the February 2012 Letter was misleading as to the effect of the Amendment Agreement; (2) the Amendment Agreement resulted in a reduction of the payment otherwise due Varnadore; and (3) the Amendment Agreement was either unsupported by consideration, obtained by misrepresentation, or both.

3

under the Early Termination Payment provision) (Complaint ¶¶ 25-27); (2) breach of the RAE Agreement accompanied by a fraudulent act (the fraudulent act being Nationwide's actions relating to amendment of the RAE Agreement) (*id.* ¶¶ 28-34); (3) fraud relating to the reasons given for and anticipated benefits from the Amendment Agreement (*id.* ¶¶ 35-39); (4) fraudulent inducement causing Varnadore to sign the Amendment Agreement (*id.* ¶¶ 40-46); and (5) violation of the South Carolina Unfair Trade Practices Act for Nationwide's acts "both in terminating [Varnadore's RAE] Agreement because of the alleged need to clarify terms and comply with taxation laws . . . and practices in the course and conduct of Defendant's business and trade" (*id.* ¶¶ 47-52).[5] As to the unfair trade practices claim, Varnadore alleges he has "sustained an actual loss, in that he has lost substantial income because of the wrongful breach of his [RAE] Agreement, misleading statements regarding the need for the Amendment Agreement and for Nationwide's denial of compensation to Plaintiff when Defendant knew Plaintiff had made plans for the Early Termination Payment." *Id.* ¶ 51.

**RAE Agreement.** The RAE Agreement, on which Varnadore relies in most if not all of his claims, includes the following provision:

**Governing Law**

It is hereby agreed by the parties that this Agreement shall be governed by the laws of the State of Ohio, regardless of any conflicts of law provision requiring reference to the rules of, decision in, and/or laws of another state or sovereign nation and that *any action or proceeding arising from a dispute concerning the RAE Program shall be brought in Franklin County, Ohio*.

RAE Agreement § 22 (emphasis added).

---

[5] At various points in his complaint, Varnadore refers to Nationwide's "termination" of the RAE Agreement. Given the context of these allegations, and the fact that it was Varnadore who resigned his agency relationship, these references appear to refer to Nationwide's alleged unilateral amendment of the RAE Agreement, not to any termination of the agreement.

**Amendment Agreement.** The Amendment Agreement modified Sections 12, 16, 18, 21, 25 and 27 of the RAE Agreement. It did not modify Section 22, the Governing Law provision, which contains the forum-selection clause. The Amendment Agreement also contains the following language (references to "Agreement" refer to the RAE Agreement):

> By signing the Amendment, Agent hereby reaffirms his/her promises, covenants, and obligations as set forth in the Agreement and waives all claims that he/she has or may have against Nationwide and Nationwide Bank as of the date of his/her execution of this Amendment. In all other respects, the Agreement remains unchanged and remains in full force and effect according to its terms and conditions.

Complaint Ex. C at 3.

### STANDARD

"[W]hen parties to a contract confer jurisdiction and venue on a particular court, as a general matter federal common law directs courts to favor enforcement of the agreement, so long as it is not unreasonable." *See Albemarle Corp., v. AstraZeneca UK Ltd.*, 628 F.3d 643, 649 (4th Cir. 2010) (citing *The Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (1972)). In *Albemarle*, the Fourth Circuit concluded that enforcement of forum-selection clauses should be resolved as a procedural matter. *See* 628 F.3d at 650. As the court explained, *The Bremen* and cases applying that decision

> apply federal common law favoring the enforcement of forum selection clauses when interpreting contracts that contain forum selection clauses, because forum selection clauses implicate the appropriate venue of a court. The appropriate venue of an action is a procedural matter that is governed by federal rule and statutes. . . . Thus, when a court is analyzing a forum selection clause, which changes the default venue rules applicable to the agreement, that court will apply federal law and in doing so, give effect to the parties' agreement.
>
> * * *
>
> Following the majority rule, we thus conclude that a federal court interpreting a forum selection clause must apply federal law in doing so. As an agreement purporting to modify or waive the venue of a federal court, a forum selection clause implicates what is recognized as a procedural matter governed by federal law—the proper venue of the court. Using this reasoning, the Supreme Court applied federal law in enforcing a forum selection clause in a federal suit where a motion to transfer venue under 28 U.S.C. § 1404 had been filed. . . .

> When construing forum selection clauses, federal courts have found dispositive the particular language of the clause and whether it authorizes another forum as an alternative to the forum of the litigation or whether it makes the designated forum exclusive.

*Id.* at 650.

While recognizing that forum-selection clauses enjoy a presumption of enforceability, the *Albemarle* court acknowledged that,

> [u]nder *The Bremen*, a forum selection clause may be found unreasonable if:
>
>> (1) [its] formation was induced by fraud or overreaching; (2) the complaining party "will for all practical purpose be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Albemarle,* 628 F.3d at 651 (bracketed "[its]" in original) (quoting *Allen v. Lloyd's of London*, 94 F.3d 923, 928 (4th Cir. 1996) (summarizing *The Bremen* factors)).[6]

The Fourth Circuit's use of a bracketed "its" in summarizing the first factor refers back to the term "forum selection clause." This suggests that any consideration of fraud or overreaching in "formation" should focus on the forum-selection clause itself, not on the contract as a whole. This interpretation is consistent with *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), in which the Court held as follows:

> In *The Bremen* we noted that forum-selection clauses "should be given full effect" when "a freely negotiated private international agreement (is) unaffected by fraud . . . ." This qualification does not mean that any time a dispute arising out of a transaction is based upon an allegation of fraud, as in this case, the clause is unenforceable. Rather, it means that an arbitration or forum-selection clause in a

---

[6] In *Allen*, the Fourth Circuit uses "their" rather than the singular "its" to refer to "choice of forum and law provisions[.]" This usage is left intact in *Albemarle's* quotation of the fourth factor in *Allen* as reflected above.

> contract is not enforceable *if the inclusion of that clause in the contract* was the product of fraud or coercion.

*Scherk*, 417 U.S. at 519 n.14 (emphasis added).

## DISCUSSION

Through its present motion, Nationwide seeks to dismiss this action or, in the alternative, transfer it to a court within the jurisdiction specified in the forum-selection clause. The critical questions are, therefore: (1) whether the claims fall within the scope of the forum-selection clause; (2) whether there is any impediment to enforcement of the forum-selection clause; and (3) whether dismissal or transfer is the proper remedy.

**I.     Varnadore's Claims Fall within Scope of Forum-Selection Clause**

Although founded on various theories, Varnadore's claims all rely on a single core allegation: that he was improperly and unreasonably denied payments due him under the RAE Agreement, including through alleged unilateral amendment of that agreement. Thus, his claims appear on their face to relate to the RAE Program and, therefore, fall within the scope of the forum-selection clause found in Section 22 of the RAE Agreement.

While other provisions of the RAE Agreement were modified by the Amendment Agreement, the Governing Law provision was not. Instead, the Amendment Agreement reaffirmed any provision of the RAE Agreement not otherwise modified. The forum-selection clause, therefore, applies whether or not the Amendment Agreement is set aside.

**II.    There Is No Impediment to Enforcement of the Forum-Selection Clause**

Varnadore advances several arguments against enforcement, both procedural and substantive. First, Varnadore argues dismissal is not a proper procedural mechanism for enforcement of a forum-selection clause in a removed action. Dkt. No. 11 at 4. Second, Varnadore argues transfer is

7

improper because the forum-selection clause fails to specify a federal forum. Finally, Varnadore argues the forum-selection clause is unenforceable in light of *The Bremen*.

### A. Enforcement of the Forum-Selection Clause After Removal

Varnadore argues that a removed action may not be dismissed for improper venue based on a forum-selection clause because venue in a removed action is governed solely by 28 U.S.C. § 1441(a).[7] Dkt. No. 11 at 4 (citing *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531 (6th Cir. 2002) (holding that, after removal, an action may not be dismissed for improper venue based on forum-selection clause, though such clause may be considered in support of a motion to transfer under § 1404(a)); *Palmetto Bank v. Bankfirst*, C.A. No. 6:08-cv-4072-GRA, 2009 WL 212417 (D.S.C. Jan 28, 2009) (citing *Kerobo* and denying motion to dismiss for improper venue based on forum-selection clause after removal but transferring case)[8]). He, nonetheless, concedes that transfer remains available under 28 U.S.C. § 1404(a), which allows transfer "for the convenience of the parties and witnesses, [and] in the interest of justice." *See Kerobo*, 285 F.3d at 539; *Palmetto Bank*, 2009 WL 212417 at *1.

---

[7] Section 1441(a) provides that removal must be "to the district court of the United States for the district and division embracing the place where such action is pending." Although Section 1441(a) does not use the word "venue," the United States Supreme Court held in *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663 (1953), that § 1441(a) controls venue in a removed action, precluding a motion to dismiss for improper venue based on § 1391. *Id.* at 665-66.

[8]*Palmetto Bank* relies on *Kerobo* for the proposition "Rule 12(b)(3) is not a proper procedural mechanism for enforcing a forum-selection clause in cases removed from state to federal court." Slip. Op. at *1. *Palmetto Bank* suggests that this is because the removing party has "waived the right to contest venue according to the removal statute." It does not, however, cite authority for the proposition that removal constitutes a waiver, and this concept is not addressed in *Kerobo*. 2009 WL 212417 *1.

*Palmetto Bank* also does not address the potential conflict between *Kerobo* and earlier Fourth Circuit precedent, *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544 (4th Cir. 2006). *Palmetto Bank* could not have addressed or considered *Albemarle* as it predates that decision.

8

The Fourth Circuit has not directly addressed the impact of removal on a motion to dismiss based on a forum-selection clause. It has, however, affirmed dismissal for improper venue under Rule 12(b)(3) based on forum-selection clauses in at least two removed actions. *See Albemarle*, 628 F.3d at 646 (noting action was commenced in state court and removed to federal court before the motion to dismiss for improper venue was filed); *Baker v. Adidas America, Inc.*, 335 Fed. Appx. 356 (4th Cir. June 30, 2009) (unpublished) (affirming dismissal of removed action under Rule 12(b)(3) based on forum-selection clause). District courts within the Fourth Circuit have followed *Kerobo*, noting the lack of Fourth Circuit guidance on this issue. *See*, *e.g.*, *American Ins. Marketing Corp. v. 5 Star Life Ins. Co.*, ___ F. Supp. 2d ___, 2013 WL 3895039 *4 (D. Md. July 26, 2013) (denying Rule 12(b)(3) motion based on a forum-selection clause after removal and discussing a number of decisions finding Rule 12(b)(3) and Section 1406(a) unavailable after removal but acknowledging that this is an issue on which courts have reached differing opinions and on which the Fourth Circuit has not spoken); *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB–12–2109, 2013 WL 1224484, at *4 & n.7 (D. Md. Mar. 26, 2013) (denying Rule 12(b)(3) motion based on a forum-selection clause following defendant's voluntary and proper removal).

In light of *Kerobo* and the lack of Fourth Circuit guidance on this issue, the court concludes that the better course is to deny Nationwide's motion to dismiss for improper venue pursuant to Rule 12(b)(3) and 28 U.S.C. § 1406(a) and to consider Nationwide's alternative motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

**B.** **Availability of Federal Forum under the Forum-Selection Clause**

Varnadore argues that transfer to the Southern District of Ohio, the alternative relief sought, is improper because the forum-selection clause "fails to require a federal court to be the designated venue." Dkt. No. 11 at 4. This argument misses the mark as the forum-selection clause simply

9

designates the county and state in which the claim must be brought (Franklin County, Ohio). It does not limit the forum in any other respect. Thus, either a state or federal forum is available, assuming there is no other impediment such as an absence of subject matter jurisdiction.[9]

### C. Application of *The Bremen* Factors

Finally, Varnadore argues that the forum-selection clause should not be enforced in light of various factors addressed in *The Bremen*. Dkt. No. 11 at 5. Varnadore concedes that he bears the burden of establishing unenforceability. For the reasons set forth below, the court finds that he has not met this burden.

**First Factor: Was the forum-selection clause induced by fraud or overreaching?** Varnadore argues that the first factor, whether the forum-selection clause was induced by fraud or overreaching, favors denial of Nationwide's motion because his "entire theory and causes of action assert fraud and underhanded business tactics." *Id.* at 6-7. While Varnadore has alleged both fraudulent acts accompanying a breach of the RAE Agreement and a separate fraud claim relating to formation of the Amendment Agreement, he has not alleged that the RAE Agreement itself was procured by fraud or overreaching. Neither has he alleged any fraud specifically relating to inclusion of the forum-selection clause in the RAE Agreement, which is the critical inquiry. *See Scherk,* 417 U.S. at 519 n.14.

Varnadore's arguments relating to differences in negotiating strength fail to suggest fraud, overreaching, or even confusion.[10] At worst, Varnadore seems to suggest that he would not have

---

[9] Varnadore concedes that the United States District Court for the Southern District of Ohio, Eastern Division, is located in Franklin County, Ohio. Dkt. No. 11 at 4. Thus, it is undisputed that there is a federal court in Franklin County, Ohio to which this action might be transferred.

[10] Varnadore notes that he does not have specialized training in the law and was on unequal
(continued...)

anticipated being hailed into *federal* court in Franklin County, Ohio. He does not argue that the RAE Agreement failed to give fair notice that any dispute relating to the RAE Program would require litigation in *some* court in Franklin County, Ohio. Varnadore's arguments, therefore, fail to establish that the forum-selection clause was induced by fraud or overreaching.

**Second Factor: Will the complaining party, for all practical purposes, be deprived of his day in court because of grave inconvenience or unfairness of the selected forum?** Varnadore argues that *The Bremen*'s second factor precludes enforcement of the forum-selection clause because he will face substantial difficulty prosecuting this action in Ohio due to his limited financial means. He alleges further that these difficulties were caused, at least in part, by Nationwide's actions. Varnadore notes, for example, that he will be required to obtain separate counsel in a foreign jurisdiction which is Defendant's "home" venue. Beyond these generalized assertions, Varnadore proffers no specific allegations or evidence of inconvenience or unfairness. His arguments do not, in any event, suggest any greater inconvenience or difficulty than would be faced by any person required to pursue litigation, if at all, in a state other than his home state.[11] Varnadore has, therefore, failed to establish that litigating this action in Franklin County, Ohio would impose such grave inconvenience or unfairness as would deprive him of the ability to advance this case. *See*

---

[10](...continued)
footing in negotiating both the RAE Agreement and the Amendment Agreement with Nationwide, "a billon dollar company." He further notes that the forum-selection clause appears under the heading "'Governing Law' and does not specifically state the Court to which Nationwide now asks that this case be transferred." Dkt. No. 11 at 8. Varnadore does not, however, point to any allegation or evidence that would suggest any fraud in the procurement of the RAE Agreement, or, more critically, in the forum-selection clause itself.

[11]  Further, a number of Varnadore's claimed difficulties (*e.g.*, the need to hire new or additional counsel) are caused not by enforcement of the forum-selection clause itself, but by Varnadore's decision to file the action in some other forum in the first instance.

*Bremen*, 407 U.S. at 17-18 ("Whatever 'inconvenience' [the party opposing dismissal/transfer] would suffer by being forced to litigate in the contractual forum as it agreed to do was clearly foreseeable at the time of contracting.").

**Third Factor: Will some fundamental unfairness in the chosen law deprive Varnadore of a remedy?** Instead of arguing that Ohio law is fundamentally unfair and will deny him a remedy, Varnadore argues that Nationwide will have a home-state advantage defending itself in Ohio. This miscontrues the third factor, which speaks of fundamental unfairness in the chosen law, not relative advantages of a location for one party or the other. In any event, Varnadore concedes that he has a remedy available under Ohio law. Accordingly, Varnadore has failed to show that *The Bremen*'s third factor presents any impediment to enforcement of the forum-selection clause.

**Fourth Factor: Will enforcement of the forum-selection clause contravene a strong public policy of the forum state?** Relying primarily on S.C. Code Ann. § 15-7-120(A), Varnadore argues that South Carolina public policy disfavors forum-selection clauses and supports disregarding the parties' forum-selection clause.[12] He, nonetheless, concedes that *The Bremen*'s "fourth factor is not [alone] likely met by § 15-7-120(A)[,]" but suggests it is "one more element to be added to the Court's finding that the forum selection clause . . . was not negotiated at arm's length by parties of equal knowledge or power[.]" Dkt. No. 11 at 12. Varnadore further suggests that "there is at least

---

[12] Section 15-7-120(A) provides:

> Notwithstanding a provision in a contract requiring a cause of action arising under it to be brought in a location other than as provided in this title and the South Carolina Rules of Civil Procedure for a similar cause of action, the cause of action alternatively may be brought in the manner provided in this title and the South Carolina Rules of Civil Procedure for such causes of action.

S.C. Code Ann. § 15-7-12(A).

12

a presumption of a strong public policy to protect Mr. Varnadore to bring his claims in his home State." *Id.*

Varnadore's public policy argument is precluded by the Fourth Circuit's decision in *Albemarle*, which held that Section 15-7-120(A) did not manifest a strong public policy against enforcement of forum-selection clauses. *Albemarle*, 628 F.3d at 651-52 (noting, *inter alia*, that South Carolina courts and federal courts sitting in South Carolina have enforced forum-selection clauses in contracts, notwithstanding the existence of § 15-7-120(A)).[13]

For the reasons set forth above, the court finds that the forum-selection clause in Section 22 of the RAE Agreement: (1) covers the claims in this action; (2) may be enforced under 28 U.S.C. § 1404(a); and (3) is not unenforceable based on any factor discussed in *The Bremen*.

## III.   Transfer is the Proper Relief

Varnadore's arguments relate primarily to the added expense of proceeding in another venue. While he does not seek transfer as the less severe remedy, Varnadore's financial concerns favor transfer given that it is the option least likely to add to further delay and expense. Transfer also prevents any possible statute of limitations problem which might be caused by dismissal. In light of the potential procedural limitations in removed cases as outlined in *Kerobo*, the court finds

---

[13] Three of the four reasons given for the holding in *Albemarle* suggest that no expression of the state's public policy would be sufficient. *See Albemarle*, 628 F.3d at 652 ("*First*, insofar as the South Carolina statute would purport to impose South Carolina procedural rules on a federal court, it would be preempted by federal law."); *id.* ("*Second*, state reluctance to recognize and enforce forum selection clauses was specifically addressed and countered by the Supreme Court's holding in *The Bremen*" which "held that, contrary to judicial disfavor of forum selection clauses such as that manifested in the South Carolina statute, in federal court, forum selection clauses enjoy a presumption of enforceability"); *id.* ("*Fourth* and finally, it can hardly be a strong public policy to countermand the very policy that the Supreme Court adopted in *The Bremen*.").

transfer under 28 U.S.C. § 1404(a) to be the appropriate remedy to enforce the parties' forum-selection clause.

## CONCLUSION

For the reasons set forth above, the court finds the forum-selection clause in Section 22 of the RAE Agreement applies to this dispute and is enforceable. The court, however, finds that the proper relief is transfer to the Southern District of Ohio.[14] The court grants this relief under 28 U.S.C. § 1404(a).

**IT IS SO ORDERED.**

                                          S/ Cameron McGowan Currie
                                          CAMERON MCGOWAN CURRIE
                                          UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
August 22, 2013

---

[14] Transfers are to a specified district, with divisional assignments being handled by the transferee court. This court, nonetheless, directs the transferee court's attention to the forum-selection clause which suggests this matter should be assigned within the division covering Franklin County.